CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY
*v.* McCRARY.

Opinion delivered April 29, 1929.

*Buzbee, Pugh & Harrison,* for appellant.

*Marvin B. Norfleet,* for appellee.

HUMPHREYS, J. Appellee brought this suit against appellant in the circuit court of St. Francis County, to recover damages in the sum of $1,500 for injuries alleged to have been received on the 30th day of November, 1927, while a passenger on its train No. 42, through its alleged negligence in maintaining the foot-rest attached to the seat in front of the seat in which he sat, in an unrepaired and defective condition, in that same was jammed or locked in an upward position instead of being in a downward position, and working up and down, as it should, on a pivot.

Appellant filed an answer, denying the material allegations of appellee's complaint, and pleading, by way of an additional defense, contributory negligence on the part of appellee.

The cause was heard upon the pleadings, testimony and instructions of the court, which resulted in a verdict and consequent judgment in favor of appellee for $350, from which is this appeal.

At the conclusion of the testimony, appellant requested an instructed verdict, upon the theory that no liability was shown under the testimony, which instruction was refused by the court, over appellant's objection and exception; and the only contention made for a reversal of the judgment on this appeal was the refusal of the

court to peremptorily instruct a verdict for appellant. We now proceed to a determination of that contention.

The testimony, viewed in the most favorable light to appellee, reflects that he entered the day coach of appellant at Forrest City as a passenger to Memphis, and took a seat, without noticing the condition of the foot-rest attached to the seat in front of where he sat; that the foot-rest was turned upward, jammed and locked, instead of being turned downward and working upon a pivot, as it should have done; that he extended his feet along the floor, and immediately went to sleep; that in so extending his feet they passed under instead of over the foot-rest, on account of its being turned up instead of down; that when he reached his destination in the station at Memphis he arose from his slumbers for the purpose of debarking, and in withdrawing his feet he cut his shin on the foot-rest, on account of it being up and stationary instead of being down and working on a pivot. The injury received caused a running sore, which did not disappear until the following July, and which resulted in extra expense, loss of time from business, and much pain and suffering.

The testimony introduced by appellant tended to show that the foot-rest was not out of repair.

Appellant's insistence is that, conceding the foot-rest was turned up instead of down, jammed and locked so that it would not work up and down on its pivot, yet it was not in such a defective and unrepaired condition that appellant, in the exercise of the highest degree of care, should have anticipated would probably be dangerous to some passenger.

The rule invoked as applicable herein is the rule announced by this court in the case of *St. L. & S. F. R. Co.* v. *Dyer,* 115 Ark. 262, 170 S. W. 1013, to the effect that: "A railroad company is required to guard against only those things which, in the exercise of the highest degree of care, it should anticipate would probably be dangerous to some passenger." In the case cited the

injury occurred in the vestibule at the rear end of the train, where passengers were not entering or leaving the train. The trap was left up in order that the porter might flag the train out of the station until it backed down to the main line, which led to Fort Smith, and that, after having done so, he (the porter) could enter the train without having it wait until he went to the front end of it and was admitted, and that thereafter both the trap and the door would be kept closed. Appellee in that case, as well as the other passengers, were admitted at other entrances, and they knew that the places they entered were the places of exit. Under the facts in that case the court found as a matter of law that the railroad company was not making a negligent use of the rear vestibule, trap and door, and that it was under no duty to anticipate that the injured passenger would open the back door of the end coach, enter the vestibule, and be injured in the manner he was injured. The facts in the case cited are entirely different from the facts in the instant case. In the instant case the foot-rest was out of repair to such an extent that it protruded upward instead of downward, and was so jammed or locked that its position was stationary instead of working up and down, as it should, on a pivot. Had it not been defective, its position would have been close to the floor, so that no one could put his feet under it without raising it, but in its defective position one could extend his feet under it without raising it. The defective foot-rest was in front of the seat provided for the use of passengers, and where they were expected to be. There was no rule against passengers sleeping in their seats, and it is quite natural and a common thing for them to fall asleep while riding on a moving train. In doing so it would be perfectly natural for a passenger to extend his feet so as to make himself comfortable while in a reclining position. We think it entirely reasonable that the railroad company should have anticipated that a passenger might so extend his feet and limbs and in withdrawing same

might be injured on a foot-rest that was out of order and stationary on that account.

The general rule of law is that it is the duty of railroad companies to exercise the highest degree of care to see that every appliance connected with its train is kept in repair and in a safe condition for the protection of passengers. Under the facts in the instant case we think it was a question for the jury to say whether the foot rest was out of order to such an extent that the carrier should have anticipated that it would probably be dangerous to some passenger. The duty rested upon the railroad company to inspect and detect the defect in the appliance, and no such duty rested upon the passenger. The defense that appellee contributed to his injury has no place under the facts in this case, as the undisputed evidence revealed that he did not detect the condition of the foot-rest until he received the injury. No duty rested upon him to inspect the appliances furnished him, and unless it had been shown that he discovered the condition of the foot-rest before he extended his feet under same, it cannot be said, as a matter of law, that he was guilty of contributory negligence.

No error appearing, the judgment is affirmed.